IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DONTE GREEN,

     Petitioner,

v.                               Case 1:23-cv-01170-JDB-jay

BRIAN ELLER, Warden,

     Respondent.

---

ORDER DENYING 28 U.S.C. § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

---

Before the Court is the habeas corpus petition filed by the Petitioner, Donte Green, pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry ("D.E.") 1.) Respondent, Warden Brian Eller,[1] has answered. (D.E. 13.) For the following reasons, the Petition is DENIED.

## I.    STATE COURT PROCEDURAL BACKGROUND

On May 1, 2017, a Madison County, Tennessee, grand jury returned an indictment charging Green[2] with possession of cocaine with intent to sell (Count 1), possession of cocaine with intent to deliver (Count 2), possession of marijuana with intent to sell (Count 3), possession of marijuana

---

[1]According to the Tennessee Department of Correction, Felony Offender Information, Green is on active supervision with the Jackson, Tennessee, Probation and Parole Office. *See* Search - Tennessee Felony Offender Information (last accessed July 16, 2026).

[2]The Court will sometimes refer to Green as the "Defendant" when discussing the underlying criminal case.

with intent to deliver (Count 4), possession of drug paraphernalia (Count 5), and escape (Count 6). (D.E. 12-1 at PageID 94-100.)

Defendant was represented by Attorney Anna Case at trial and on appeal. On August 10, 2017, she filed a motion to suppress evidence from a search warrant obtained after a motel desk clerk reported the smell of marijuana from Green's motel room and law enforcement smelled "a strong odor" of the substance when they approached the room, whose door was ajar. (*See id.* at PageID 103-06.) On August 30, 2017, the trial court denied the motion. (*Id*. at PageID 107-08.)

At trial, the jury found Defendant guilty on Counts 1 through 5. (D.E. 12-3 at PageID 468-70.) The court granted a motion for judgment of acquittal on Count 6. (*Id.* at PageID 451-52.) It also merged Count 2 into Count 1 for a single cocaine-related conviction and Count 4 into Count 3 for a single marijuana-related conviction. (D.E. 12-2 at PageID 136, 138.) Green was sentenced to nineteen years for the cocaine conviction, six years for the marijuana conviction, and eleven months and twenty-nine days for possession of drug paraphernalia. The marijuana and drug paraphernalia convictions were to run concurrently with one another and consecutively to the cocaine conviction for an effective sentence of twenty-five years. (D.E. 12-1 at PageID 135-40.)

On November 13, 2017, Defendant moved for a new trial, arguing that (1) the motion to suppress was improperly denied, (2) the evidence was insufficient to support his convictions, and (3) the motion for judgment of acquittal on the drug charges was improperly denied. (*Id.* at PageID 141-42.) The trial court denied the motion for new trial in an order entered January 11, 2018. (*Id.* at PageID 189.)

Green appealed the same day, asserting that (1) law enforcement officers entered his motel room based on an unfounded belief that an unknown occupant might destroy evidence and (2) the evidence was insufficient to support his drug convictions. (D.E. 12-9, 12-10.) On April 15, 2019,

the Tennessee Court of Criminal Appeals (the "TCCA") affirmed the trial court's judgments. *See State v. Green*, No. W2018-00092-CCA-R3-CD, 2019 WL 1595684, at *7 (Tenn. Crim. App. Apr. 15, 2019); (*see also* D.E. 12-12). On June 19, 2019, Defendant sought and was denied discretionary review. (*See* D.E. 12-14.)[3]

The inmate then filed a pro se petition for relief from conviction or sentence in the Madison County Circuit Court. (D.E. 12-16 at PageID 698-730.) He alleged therein that (1) his conviction was based on evidence gained pursuant to an unconstitutional search and seizure, (2) he was unlawfully detained, (3) he received ineffective assistance of trial and appellate counsel, and (4) there was prosecutorial misconduct. (*Id.* at PageID 707, 711-29.) The court appointed Attorney Greg Gookin to represent Green. (*Id.* at PageID 753.) Gookin amended Defendant's petition to add a claim of plain error concerning an incorrect reading of facts in the motion to suppress. (*Id.* at PageID 761-62).

The post-conviction court held an evidentiary hearing on April 5, 2021 (*see* D.E. 12-17), and denied relief on April 20, 2021 (D.E. 12-16 at PageID 767-68). Green appealed. (*Id.* at PageID 776-77.) On July 15, 2022, the TCCA affirmed the denial of post-conviction relief. *See Green v. State*, No. W2021-00442-CCA-R3-PC, 2022 WL 2760879, at **1, 9 (Tenn. Crim. App. July 15, 2022); (*see also* D.E. 12-23.) On September 13, 2022, the prisoner applied for permission to appeal and was denied review. (D.E. 12-25.)

II.   EVIDENCE

On direct appeal, the TCCA summarized the evidence presented at trial as follows.

The Defendant had been a guest in a motel for approximately one week when another guest alerted the motel clerk to the smell of marijuana in the hallway and

---

[3]The orders denying permission to appeal to the Tennessee Supreme Court are not contained in the record. (*See* D.E. 12.)

the clerk notified law enforcement.  After drugs were discovered in the Defendant's room, he was charged with possession of 0.5 grams or more of cocaine with the intent to sell, possession of 0.5 grams or more of cocaine with the intent to deliver, possession of 14.175 grams or more of marijuana with the intent to sell, possession of over 14.175 grams or more of marijuana with the intent to deliver, possession of drug paraphernalia, and escape from custody.

Officer Clayton Smith of the Jackson Police Department, the only witness at the suppression hearing, testified that on July 1, 2016, at approximately 8:45 p.m., he was dispatched to the motel to investigate possible drug activity.  The clerk told him that a strong odor of marijuana was coming from the fourth floor, somewhere between rooms 450 and 454.  The clerk told law enforcement that she suspected the smell might be coming from room 452 because all of the other rooms in the vicinity were occupied by families, while room 452 was occupied by a single man, the Defendant.  The clerk also "said there's possibly a female inside of the room."

Uniformed law enforcement used the elevator to reach the fourth floor and Officer Smith could smell raw marijuana as soon as he exited the elevator.  He did not smell marijuana burning.  Officer Smith acknowledged he went straight to room 452.  He testified that when he was directly in front of the room, he was able to determine that the odor of marijuana was coming from it.  The Defendant's room was equipped with a latch that was flipped toward the door, propping the door open a crack.

Officers were preparing to knock on the Defendant's door when he opened it, and they smelled a strong odor of marijuana when the door was opened.  Officers asked the Defendant about the odor of marijuana as he stood in the doorway, and he responded that he did not know anything about the odor of marijuana coming from his room.  The Defendant was detained while he was in the doorway and brought into the hallway outside of the motel room, where he was searched and where an officer "sat him down."  The search of the Defendant's person yielded one empty plastic bag and $79.  The Defendant told law enforcement that no one was in the room.

Police officers then "challenged the room," which Officer Smith described as identifying themselves as police officers and ordering anyone in the room to come out.  There was no response.  Officer Smith acknowledged that he did not hear any noises at all from the room, including voices, movement, or a toilet flushing.  He agreed that the only articulable fact which made him believe the room might be occupied was "[j]ust the clerk's word saying that there's possibly a female inside."

Officers entered the room "to do a protective sweep of the room to make sure nothing was being destroyed."  Officer Smith described the layout of the room, which had a bathroom immediately to the left of the entry, two beds beyond the bathroom, and a "patio" area.  When officers entered the room, no one was present, but they saw plastic bags on the bed and marijuana on the bedside table.  Officers

were in the room for approximately fifteen to thirty seconds.  They began to exit the room when they heard a commotion which turned out to be the Defendant fleeing down the staircase.  The Defendant was apprehended and taken into custody in a neighboring parking lot, and Officer Smith returned to the room to secure it while a search warrant was obtained.

Pursuant to the search warrant, police found pills in a fanny pack, marijuana, and cocaine.  Officer Smith acknowledged that he did not secure video footage of the hallway from the motel.

The search warrant was not included in the record on appeal.  Defense counsel noted at the suppression hearing that the search warrant was obtained using information gathered during the protective sweep.  The trial court read portions of the affidavit in a discussion with counsel.  The trial court noted that the affidavit contained information that the clerk had alerted police to the smell of marijuana coming from the room, that police smelled marijuana in the hallway, that the Defendant opened the door, and that the officer "immediately smelled the strong odor of what he believed to be raw marijuana coming from the room," at which point the Defendant was detained.  The affidavit included a statement, that "[o]fficers began clearing the room for other possible persons in order to secure the room."

The trial court denied the Defendant's motion to suppress the evidence, concluding that law enforcement had a reasonable belief that someone other than the Defendant was in the room because the clerk had informed the law enforcement officers that a woman could be in the room.  The trial court also credited Officer Smith's testimony and found that the Defendant was untruthful when he told Officer Smith that he did not know about the odor of marijuana coming from his room.  Accordingly, the trial court found that the initial entry into the room was proper.

The case proceeded to trial, where Ms. Amber Gallagher, who was employed as the lead front desk clerk at the motel, testified that she received a complaint from a guest that someone was smoking marijuana on the fourth floor of the motel.  Following motel policy, she summoned the police.  She also went upstairs to see if she could smell anything, and she smelled marijuana from the vicinity of rooms 451 to 455.  Not all of these rooms were occupied, and one was occupied by the complaining guest.  Ms. Gallagher gave police two or three room numbers to check.  Through the motel's video surveillance system, she observed the Defendant's encounter with police and his attempted escape.  Ms. Gallagher stated that she habitually refused to rent rooms to guests if they had previously had high traffic or the odor of drugs in their rooms.  Although the Defendant had been there for at least one week, she had seen no suspicious activity in his room during that time.  He had had two different women as guests.  Ms. Gallagher stated that she had predominantly seen the Defendant with one young woman and that she believed that "even in that night that there was a woman there."  To her knowledge, no one requested that the motel's video surveillance be preserved.

5

Officer Smith testified generally consistently with his testimony at the suppression hearing.  He stated that Ms. Gallagher had told him "that there was possibly a female in the room with him" and that the smell of marijuana became stronger when the Defendant opened his door.  The Defendant said that no one else was in the room and that there was no marijuana in the room, and he refused consent to search the room.  Officer Smith reiterated that the Defendant was detained in the doorway and asked to sit in the hallway while officers "entered the room to make sure that nobody was in the room destroying any type of evidence or anything like that."  Officer Smith testified that there were multiple clear plastic bags inside a larger bag and digital scales in the room.  He stated that scales are used to measure narcotics and that plastic bags can be used for storing narcotics.

Law enforcement recovered one bag with approximately 33.6 grams of what appeared to be marijuana, one bag containing two separate bags containing a total of approximately 57.5 grams of what appeared to be marijuana, and six other bags containing between one and fifteen grams of what appeared to be marijuana.  They also recovered a bag containing approximately 3.3 grams of a substance believed to be cocaine and a fanny pack with fewer than ten pills.  Officer Smith acknowledged that plastic bags had many non-criminal uses, that scales would be beneficial to a buyer of drugs as well as a seller, and that the Defendant was not charged with any crime related to the pills.  Officer Smith acknowledged that cocaine in the amount confiscated could be for personal use.  He did not believe that the quantity of marijuana recovered was for personal use, particularly given the fact that it was split up into multiple plastic bags, but stated it was not out of "the realm of possibility."  He testified that the plastic bags were too small for a sandwich, that they would hold "[v]ery little" snack, and that he had only seen bags that size used for drugs.

Officers Adam Pinion and Bradley Lewis testified consistently with Officer Smith regarding the search and arrest.  Officer Pinion stated that Ms. Gallagher had told police "that she believed there may be one or two people in the room."  He stated that law enforcement approached the room, that the Defendant "exited" or "stepped out," and that although Officer Pinion did not hear any noise from the room, officers conducted a protective sweep "to make sure that nobody else is in there that could destroy any evidence while we were in the process of obtaining a search warrant for the room."  When the Defendant was arrested in the parking lot, officers found a bag containing one gram of what appeared to be marijuana in his sock.  Officer Pinion testified that the quantity of drugs seized from the motel room was not typical of personal use.

Officer Lewis confirmed that the Defendant opened the door and that police "had him come out into the hallway and sit down."  They did not hear anything from inside the room but subsequently performed the "security sweep."  He characterized the cocaine as a "fairly small" amount but later stated that it was more than he typically saw in arrests for personal use.  He acknowledged that none of the officers

6

involved worked for the narcotics unit.

Special Agent Peter Hall of the Tennessee Bureau of Investigation ("TBI") testified that he only tested three of the bags delivered to the TBI pursuant to a policy designed to expedite the TBI's caseload. His tests revealed 86.75 grams of marijuana and 2.24 grams of a substance containing cocaine, and law enforcement had submitted an additional 77.43 grams of a green leafy material which Agent Hall did not test.

The Defendant presented the testimony of Ms. Kizzie Cheshier, who had known the Defendant for thirteen years. The Defendant was the father of Ms. Cheshier's son, and she testified that the Defendant had suffered an ongoing problem with the use of marijuana and cocaine and that it had caused problems in their relationship.

*Green*, 2019 WL 1595684, at **1-3.

III.    HABEAS PROCEEDINGS

Green filed the Petition on August 11, 2023. He sets forth the following grounds for relief:

1.  The initial warrantless detention, search and seizure of [P]etitioner's motel room prior to obtaining a warrant rendered the search and seizure illegal in violation of the Fourth Amendment to the United States Constitution as defined by the United States Supreme Court.

2.  Petitioner received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), when his attorney failed to challenge the validity of the search warrant obtained by law enforcement after the initial warrantless search and[] failed to include the search warrant affidavit in the appellate record.

3.  That [P]etitioner's initial detention outside his motel room violated his Fourth Amendment rights against unreasonable searches and seizures under *Terry v. Ohio*, 392 U.S. 1, 21 (1968) and its progeny.

(D.E. 1 at PageID 12-13.)

On May 6, 2024, the Court ordered Respondent to respond to the Petition and file the state court record. (D.E. 8.) After receiving an extension of time (*see* D.E. 10, 11), the Warden filed the state court record on July 2, 2024 (D.E. 12), and an answer to the Petition on July 3, 2024 (D.E. 13). Eller asserts that Green's Fourth Amendment claims regarding the search of the motel room and his initial detention and search outside the room are not cognizable in these habeas

proceedings.[4]  Respondent contends that the inmate's ineffective assistance of appellate counsel claim is without merit because the TCCA's decision was not contrary to existing federal law, was not based on an unreasonable application of the facts, and that there was a reasonable basis to conclude that Petitioner was not prejudiced.  Green has not filed a reply, and the time for doing so has expired.

IV.    FEDERAL HABEAS REVIEW STANDARD

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act.  Under the statute, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where a petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, the federal court may not grant relief unless the state court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court . . . ; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An unreasonable application

---

[4]The Warden also submits that the Fourth Amendment claim arising from the initial detention and search outside the motel room is procedurally defaulted.

8

of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the [principle] to the facts of a prisoner's case." *Id*. at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (some internal quotation marks omitted).

Before a federal court will review the merits of a § 2254 claim, a petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works alongside the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id*. at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules has closed off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where

9

the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome a procedural default by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Id*. at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id*. at 327.

V.    ANALYSIS

A.    Fourth Amendment Claims.

Petitioner challenges his initial detention, the search of his person outside the motel room, and the search of the room under the Fourth Amendment. On direct appeal, the TCCA addressed the initial detention and searches in the context of the trial court's ruling on the motion to suppress

10

and determined that (1) "the legality of the initial entry is not dispositive of the suppression issue,

because law enforcement subsequently obtained a warrant to search the room"; (2) Green "[did]

not challenge the validity of th[e] search warrant on appeal"; (3) the evidence was admissible

because it was issued pursuant to a warrant that was not at issue on appeal; and (4) the odor of

marijuana was sufficient to establish probable cause.  *See Green*, 2019 WL 1595684, at \*\*5-7.

The TCCA opined:

> The Defendant asserts that his constitutional rights were violated when officers
> entered his motel room during the initial "protective sweep."  The State responds
> that exigent circumstances justified the initial search of the motel room, that the
> search was properly limited in scope, and that the drugs were found in plain view
> during the search.  . . .
>
> A trial court's findings of fact in a suppression hearing are binding on the appellate
> court unless the evidence preponderates against them.  *State v. Clark*, 452 S.W.3d
> 268, 282 (Tenn. 2014).  Determinations regarding the credibility of witnesses, the
> weight of the evidence, and the resolution of conflicts in the evidence are entrusted
> to the trial court.  *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012).  The party
> who prevails at the trial level is entitled to the strongest legitimate view of the
> evidence and to reasonable and legitimate inferences which may be drawn from it.
> *Id*.  An appellate court may consider evidence adduced at trial in determining the
> correctness of a ruling on a motion to suppress.  *State v. Sanders*, 452 S.W.3d 300,
> 306 (Tenn. 2014).  The trial court's legal conclusions and mixed questions of law
> and fact are reviewed de novo.  *State v. Meeks*, 262 S.W.3d 710, 722 (Tenn. 2008).
> The question of whether exigent circumstances justify a warrantless search is a
> mixed question of fact and law.  *Id*.
>
> The Fourth Amendment to the United States Constitution protects "the right of the
> people to be secure in their persons, houses, papers, and effects, against
> unreasonable searches and seizures."  Article I, section 7 of the Tennessee
> Constitution also guarantees the right of the people to "be secure in their persons,
> houses, papers and possessions, from unreasonable searches and seizures."
> "[T]hese constitutional provisions are designed 'to prevent arbitrary and oppressive
> interference [by law enforcement officials] with the privacy and personal security
> of individuals.'"  *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000) (quoting *INS v.
> Delgado*, 466 U.S. 210, 216 (1984)).  The touchstone of Fourth Amendment
> jurisprudence is reasonableness.  *Kentucky v. King*, 563 U.S. 452, 459 (2011); *State
> v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007).
>
> This case concerns the "chief evil" at which the Fourth Amendment is aimed:
> physical entry into a home.  *United States v. Sangineto-Miranda*, 859 F.2d 1501,

11

1511 (6th Cir. 1988) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)).  A warrantless search of a home is presumed to be unreasonable, even when police have probable cause to believe they will locate incriminating evidence inside.  *State v. Carter*, 160 S.W.3d 526, 531 (Tenn. 2005).  However, there are exceptions to the warrant requirement, including the existence of exigent circumstances.  *Meeks*, 262 S.W.3d at 722.  The State bears the burden of showing that the exception to the warrant requirement was met.  *Id*.  Preventing the imminent destruction of evidence is one such exigent circumstance.  *Id*. at 723.

The Defendant challenges the initial entry into the motel room and asserts that if the entry was illegal, then the evidence recovered must be suppressed.  We conclude that the evidence was admissible because it was obtained pursuant to a warrant not at issue on appeal.

The exclusionary rule may bar the admission of evidence obtained from an unconstitutional search.  *Carter*, 160 S.W.3d at 532.  However, the evidence may still be admissible if the evidence "is subsequently discovered following the execution of a valid warrant based upon facts independent and separate from information discovered as a result of the unlawful entry."  *Id*. (concluding that the evidence was admissible despite an illegal search because the affidavit supporting the subsequent warrant did not refer to the initial illegal entry).  The independent source doctrine provides that "an unconstitutional entry does not compel exclusion of evidence found within a home if that evidence is subsequently discovered after execution of a valid warrant obtained on the basis of facts known entirely independent and separate from those discovered as a result of the illegal entry."  *State v. Clark*, 844 S.W.2d 597, 600 (Tenn. 1992).

In analyzing the validity of a search pursuant to a warrant, a court may redact an affidavit to remove any references to tainted information that was illegally obtained, and "any resulting search is deemed constitutional so long as the redacted affidavit has been properly scrutinized and still suffices to establish probable cause."  *State v. Randall Keith Smith and Nicholas Ryan Flood*, No. W2009-02678-CCA-R3-CD, 2011 WL 6885348, at *7 (Tenn. Crim. App. Dec. 27, 2011) (rejecting the defendant's contention that *Clark* demands otherwise, and concluding that such a reading of *Clark* is both too literal and inconsistent with federal and state practice).  Such redaction is common practice in both the Sixth Circuit and Tennessee.  *See, e.g., United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005); *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996); *Randall Keith Smith and Nicholas Ryan Flood*, 2011 WL 6885348, at *7 (citing cases); *State v. Stephen J. Udzinski and Donna Stokes a/k/a Donna Story*, No. 01C01-9610-CC-00431, 1998 WL 44922, at *9 (Tenn. Crim. App. Feb. 5, 1998); *State v. Vanderford*, 980 S.W.2d 390, 399-400 (Tenn. Crim. App. 1997); *see also State v. Bowling*, 867 S.W.2d 338, 342-43 (Tenn. Crim. App. 1993).  The rationale for permitting a court to examine a redacted affidavit for probable cause is to prevent law enforcement from being put "'in a worse position than they would have been in absent any error or violation.'"  *Murray v. United States*, 487 U.S. 533, 537 (1988) (quoting *Nix v.*

*Williams*, 467 U.S. 431, 443 (1984)).

The Defendant does not argue on appeal that the search warrant was rendered invalid by the initial warrantless entry. We note that at the suppression hearing, defense counsel did argue that the affidavit in the search warrant relied on facts ascertained during the initial entry. The trial court ultimately did not address the validity of the search warrant but concluded that the initial entry did not violate the Defendant's rights against unreasonable searches and seizures. Although the search warrant was made an exhibit to the hearing on the motion to suppress, it is not part of the record before us. The appellant has the duty to prepare a record which conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b); *see State v. Smotherman*, 201 S.W.3d 657, 661 (Tenn. 2006) (noting that "any matter that the trial court has appropriately considered is properly includable in the appellate record"). Because the affidavit is not part of the record and because the Defendant includes no argument regarding the validity of the search warrant, we consider any challenge to the search conducted pursuant to the search warrant waived.

We observe, regardless, that in rendering its decision at the suppression hearing, the trial court read from the affidavit supporting the search warrant. The affidavit recited that law enforcement were called to the motel due to the smell of marijuana, that they approached the Defendant's door, that the Defendant opened the door, and that an "[o]fficer immediately smelled the strong odor of what he believed to be raw marijuana coming from the room." The odor of an illegal substance alone can provide sufficient probable cause for the issuance of a search warrant. *State v. Billy Joe Hodge*, No. W2016-01009-CCA-R3-CD, 2017 WL 4004229, at *6 (Tenn. Crim. App. Sept. 8, 2017) (noting that "probable cause can be based solely on an officer's detection of the odor of marijuana" and concluding that the smell of marijuana from a residence provided probable cause for the search); *State v. Frederic A. Crosby*, No. W2013-02610-CCA-R3-CD, 2014 WL 4415924, at *8 (Tenn. Crim. App. Sept. 9, 2014) (the smell of marijuana emanating from a person provided probable cause to search); *State v. James Castile*, No. M2004-02572-CCA-R3-CD, 2006 WL 1816371, at *8 (Tenn. Crim. App. June 28, 2006) (determining "that the officers could have justified a warrantless search of the room based on the smell of methamphetamines alone" and rejecting the defendant's claim that an illegal pat-down entitled him to suppression of the evidence); *State v. Bradley Lonsinger*, No. M2003-03101-CCA-R3-CD, 2005 WL 49569, at **5-6 (Tenn. Crim. App. Jan. 5, 2005) (noting that the odor of methamphetamine from the defendant's home alone could established probable cause). Here, the affidavit alleged officers smelled marijuana emanating from the Defendant's room. Accordingly, it appears there was probable cause to support the search pursuant to the search warrant—a search that ultimately resulted in the recovery of the marijuana, cocaine, plastic bags, and scales.

Even if we were to conclude that law enforcement's initial entry was illegal because

13

they did not possess a reasonable belief in the presence of an occupant of the room or reasonable belief that this person was likely to destroy evidence of a crime, *see United States v. Elkins*, 300 F.3d 638, 656 (6th Cir. 2002), the results of the search pursuant to the subsequently obtained warrant are not challenged on appeal. The incriminating evidence was seized during the search of the Defendant's room pursuant to the search warrant. Because the search pursuant to the search warrant is not under review, the Defendant has not demonstrated that he is entitled to the suppression of the evidence.

*Green*, 2019 WL 1595684, at **5-7.

The exclusionary rule is a "judicially fashioned remedy" available for Fourth Amendment violations unless otherwise provided for by statute, and a defendant has no constitutional right to the exclusion of inculpating evidence. *See Person v. Douglas*, No. 24-1832, 2025 WL 2808420, at *2 (6th Cir. Apr. 28, 2025). *Stone v. Powell*, 428 U.S. 465, 486 (1976), prohibits federal habeas corpus review of a state prisoner's Fourth Amendment claim. *Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013). A Fourth Amendment claim is not cognizable on collateral review when the defendant has had a "full and fair" opportunity to litigate the claim in the first instance. *Stone*, 428 U.S. at 494. The "opportunity for full and fair consideration" means there is an available avenue for the prisoner to present his claim to the state courts and does not require an inquiry into the adequacy of the procedure used to resolve the particular claim. *Good*, 729 F.3d at 639. A reviewing court must determine (1) "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a [F]ourth [A]mendment claim," and (2) "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *See Bugno v. Walters*, No. 25-3629, 2026 WL 332415, at *2 (6th Cir. Feb. 5, 2026) (quoting *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)); *see also Parker v. Fender*, No. 21-3363, 2021 WL 4771845, at *2 (6th Cir. Sept. 13, 2021) (quoting *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000)). The Sixth Circuit has held that Tennessee's procedural mechanism provides an opportunity to raise a Fourth Amendment claim. *See Grogger v. Genovese*, No. 16-5486, 2017 WL 11621229, at *2 (6th Cir.

14

Feb. 15, 2017).

Petitioner acknowledges that his lawyer challenged the initial warrantless entry and search of his motel room by filing a motion to suppress. However, he insists that the trial court never ruled on the validity of the subsequent search warrant. He maintains that his counsel at trial and on direct appeal failed to (1) challenge the validity of the search warrant, (2) argue the inconsistencies in the search warrant affidavit, and (3) include a copy of the affidavit in the appellate record. He further submits that, because of counsel's failures, the issue was waived on appeal. In doing so, Green relies on the decision in *Riley* to argue that *Stone* does not apply to his case and that he did not receive full and fair consideration of his Fourth Amendment claims because the state court's procedural mechanism for presenting the claims was inadequate and violated due process and equal protection. In *Riley*, the Sixth Circuit determined the state has provided "an adequate procedural mechanism for the litigation of [F]ourth [A]mendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision." *Riley*, 674 F.2d at 526.

The Warden notes the prisoner's reliance on *Kimmelman v. Morrison*, 477 U.S. 365 (1986), to show that *Stone* is inapplicable and correctly states that *Kimmelman* allowed a petitioner to proceed on an ineffective-assistance-of-counsel claim, but not a Fourth Amendment claim. In *Kimmelman*, the Supreme Court opined that Fourth Amendment and Sixth Amendment claims are distinct in nature and in the requisite elements of proof. *Kimmelman*, 477 U.S. at 374-75. Further, the Court noted that a court may "be free, under its analysis in *Stone*, to refuse for reasons of prudence and comity to burden the State with the costs of the exclusionary rule in contexts where the [c]ourt believes the price of the rule to exceed its utility," but review of the Sixth Amendment claim is mandated. *Id.* at 379. Therefore, *Kimmelman* does not stand for the proposition that the

15

ineffective assistance of counsel is a failure in the state court's procedural mechanism to allow habeas review of a Fourth Amendment claim.

Respondent also points to Green's citation to other cases relating to "full and fair litigation" of Fourth Amendment claims and argues that the inmate has failed to present any facts or arguments that demonstrate a failure of the state court mechanism in litigating his Fourth Amendment claims. The first available mechanism is under Rule 12 of the Tennessee Rules of Criminal Procedure, which allows a criminal defendant to file a pretrial motion to suppress evidence. Tenn. R. Crim. P. 12(b)(2)(C) (providing that a motion to suppress evidence must be made before trial). The second is found in Tennessee's rules of appellate procedure, which permit a criminal defendant to appeal the trial court's adverse ruling on a motion to suppress, as well as his conviction, before the TCCA or Tennessee Supreme Court. Tenn. R. App. P. 3(b) (an appeal as of right is permissible "from any judgment of conviction entered by a trial court" in a criminal action); *see Sanders v. Leeds*, No. 3:21-cv-00027, 2024 WL 3970688, at \*12 (M.D. Tenn. Aug. 28, 2024). With regard to the initial detention and search, Petitioner presented his claims through both mechanisms. *See Machacek*, 213 F.3d at 952 (Fourth Amendment claim was not cognizable where "the record reflects that petitioner was able to present his Fourth Amendment claims . . . and that those claims were carefully considered and rejected at the trial level and on appeal"). However, he used neither to challenge the search warrant.

In *Good*, the Sixth Circuit clarified the meaning of the opportunity for full and fair consideration, stating that it is "an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim" and "not the procedure used in a given case to address the specific argument." *Good*, 729 F.3d at 639. The failure of counsel to raise the issue is not a failure of the state court mechanism,

16

in the abstract, under *Stone*. *See Bugno*, 2026 WL 332415, at \*2; *see also Blocker v. Graham*, No. 6:17-cv-06648-CJS, 2022 WL 309952, at \*15 (W.D.N.Y. Feb. 2, 2022) ("trial counsel's alleged ineffectiveness is not [a] type of 'unconscionable breakdown' in the state-afforded procedure for litigating Fourth Amendment issues"); *Owensby v. Bradley*, Case No. 3:16-cv-282, 2016 WL 4547235, at \*1 (S.D. Ohio Sept. 1, 2016) ("while ineffective assistance of trial counsel might allow for relief standing alone, it does not speak to whether Ohio's procedure for Fourth Amendment claims is full and fair"), *report and recommendation adopted sub nom. Owensby v. Warden, Pickaway Corr. Inst.*, 2016 WL 5395866 (S.D. Ohio Sept. 27, 2016)..

Tennessee has provided an adequate procedural mechanism for Petitioner to litigate his Fourth Amendment claims. Therefore, they are not cognizable in this habeas matter and are DENIED.

### B.    Ineffective-Assistance-of-Appellate-Counsel Claim.

Green alleges that his counsel on appeal was ineffective for failing to challenge the validity of the search warrant and for failing to include the search warrant affidavit in the appellate record, and that, as a direct result of counsel's ineffectiveness, he was procedurally barred from pursuing issues on appeal. A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland*. To succeed on such a claim, a petitioner must demonstrate (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective

standard of reasonableness." *Id*. at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (cleaned up). An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options." *Id*. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id*. (quoting *Strickland*, 466 U.S. at 687).

The deference to be afforded a state court decision under § 2254(d) is magnified when a federal court reviews an ineffective assistance claim. "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id*. at 105. When the latter applies, "the question is not whether counsel's actions were reasonable; the inquiry is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Moreover, a criminal defendant is entitled to the effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 395-96 (1985). The failure to raise a nonfrivolous issue on

18

appeal does not automatically equal ineffective assistance of counsel, as "[t]his process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (cleaned up). Courts evaluate claims of ineffective assistance of appellate counsel using the *Strickland* standards. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (applying *Strickland* to claim that appellate counsel rendered ineffective assistance by failing to file a merits brief); *Murray*, 477 U.S. at 535-36 (failure to raise issue on appeal). To establish that appellate counsel was ineffective, a prisoner

> must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [he] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Robbins*, 528 U.S. at 285 (citation omitted).[5]

---

[5]The Sixth Circuit has identified a nonexclusive list of factors to consider when assessing claims of ineffective assistance of appellate counsel:

1. Were the omitted issues "significant and obvious?"
2. Was there arguably contrary authority on the omitted issues?
3. Were the omitted issues clearly stronger than those presented?
4. Were the omitted issues objected to at trial?
5. Were the trial court's rulings subject to deference on appeal?
6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7. What was the appellate counsel's level of experience and expertise?
8. Did the petitioner and appellate counsel meet and go over possible issues?
9. Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006).

"[T]he petitioner must demonstrate that the issue not presented was clearly stronger than issues that counsel did present." *Quinney v. Burton*, No. 18-1887, 2018 WL 7203224, at *4 (6th Cir. Nov. 5, 2018) (quoting *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003)) (internal quotation marks omitted). He is to also show "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

On post-conviction appeal, Green raised a claim that his counsel was ineffective on direct appeal for failure to challenge the validity of the search warrant. *See Green*, 2022 WL 2760879, at **1, 3, 5-8. At the post-conviction hearing, the inmate testified that he believed the challenge to the search was his strongest claim because the affidavit was not based on an independent source. He elaborated that his counsel did not raise the search warrant as an issue in the motion for new trial, although she raised it at the hearing; the issue was not preserved for appeal and should have been argued on direct appeal; his counsel failed to include the search warrant affidavit in the record on appeal and that the affidavit would have shown the independent source doctrine did not validate the search warrant; and that the trial court misread the affidavit and stated the "officers were clearing the room in order to secure the room" when it actually said "the officers were clearing the room for other possible persons in order to obtain a warrant." *Id.* at **3-4.

Attorney Cash offered testimony that she chose not to challenge the search warrant because she believed it was supported by probable cause, and that she and her client discussed "that even if the Court found the entry was invalid that they could still find the probable cause because of the smell." *Id.* at *4. She did not recall if she made the search warrant part of the appellate record. The post-conviction court made a credibility finding in favor of counsel.

The search warrant affidavit was entered as an exhibit during the post-conviction hearing and

20

stated in relevant part:

> Officer Blake Lambert and other Jackson Police Department officers responded to [the motel] because [Ms. Gallagher] smelled what she believed to be marijuana coming from room 452.  Room 452 is registered to [the Petitioner].  [Officer] Lambert approached the door to room 452 which was propped open with the security latch.  As he was about to knock on the door, [the Petitioner] opened the door.  [Officer] Lambert immediately smelled a strong odor of what is believed to be raw marijuana coming from the room.  At this time, he detained [the Petitioner] and began clearing the room for other possible persons in order to obtain a search warrant.  While clearing the room, [Officer] Lambert observed a large amount of packaged marijuana sitting on the bed and on the side table next to the bed in plain view.  There was also a clear plastic bag containing a white powder substance with cocaine on the side table next to the bed in plain view.  While [Officer] Lambert was clearing the room, . . . [the Petitioner] fled on foot running down the stairs and out of the building.  He was later captured and found to be in possession of a small amount of marijuana in his left sock.  He also had an empty clear plastic bag in his left rear pocket.

*Id.*    The post-conviction court credited Jackson Police Department Sergeant David White's testimony and found it to be consistent with the affidavit.  *See infra* at 23.

The TCCA cited the correct standard in *Strickland* and, in the context of appellate counsel's performance, cited *Evitts* for the proposition that the omitted issue must have merit and that a "petitioner must show that there was a reasonable probability that the issue 'would have affected the result of the appeal.'"  *See Green*, 2022 WL 2760879, at *5.  The court reiterated its holdings on direct appeal about the waiver of a challenge to the search warrant and that legality of the initial entry was not dispositive on the suppression of the evidence and addressed how redaction under the independent source doctrine is allowed to determine probable cause when a search warrant issues after an initial unlawful entry.  *Id.* at **6-8.  The TCCA opined:

> The Petitioner maintains that counsel was ineffective by failing to challenge the validity of the search warrant on appeal.  Specifically, the Petitioner argues that under the totality of the circumstances, the magistrate lacked probable cause to issue the warrant because the plain smell of marijuana did not establish probable cause, because the affiant relayed other officers' plain smell of marijuana rather than experiencing it himself, and because the affidavit included statements by Ms. Gallagher which she purportedly contradicted in her testimony at trial.  As part of this argument, the Petitioner contends that the initial entry into his motel room was

21

illegal and that the observations were improperly used to obtain the search warrant. The Petitioner asserts that this court would have reversed his convictions or remanded for the trial court to make further findings if counsel had challenged the validity of the search warrant on appeal and included the affidavit in the appellate record. However, the Petitioner cannot show prejudice because even if counsel had challenged the validity of the search warrant and included the affidavit in the appellate record, the independent source doctrine applied and the search warrant was valid as a result.

. . .

Disregarding the information obtained during the initial entry, the search warrant affidavit provides:

> Officer Blake Lambert and other Jackson Police Department officers responded to [the motel] because [Ms. Gallagher] smelled what she believed to be marijuana coming from room 452. Room 452 is registered to [the Petitioner]. [Officer] Lambert approached the door to room 452 which was propped open with the security latch. As he was about to knock on the door, [the Petitioner] opened the door. [Officer] Lambert immediately smelled a strong odor of what is believed to be raw marijuana coming from the room.

As this court recognized on direct appeal, the odor of an illegal substance alone can provide probable cause for the issuance of a search warrant. *Donte Lavon Green*, 2019 WL 1595684, at *7 (citing *State v. Billy Joe Hodge*, No. W2016-01009-CCA-R3-CD, 2017 WL 4004229, at *6 (Tenn. Crim. App. Sept. 8, 2017) (noting that "probable cause can be based solely on an officer's detection of the odor of marijuana" and concluding that the smell of marijuana from a residence provided probable cause for the search); *State v. Frederic A. Crosby*, No. W2013-02610-CCA-R3-CD, 2014 WL 4415924, at *8 (Tenn. Crim. App. Sept. 9, 2014) (the smell of marijuana emanating from a person provided probable cause to search); *State v. James Castile*, No. M2004-02572-CCA-R3-CD, 2006 WL 1816371, at *8 (Tenn. Crim. App. June 28, 2006) (determining "that the officers could have justified a warrantless search of the room based on the smell of methamphetamines alone" and rejecting the defendant's claim that an illegal pat-down entitled him to suppression of the evidence); *State v. Bradley Lonsinger*, No. M2003-03101-CCA-R3-CD, 2005 WL 49569, at **5-6 (Tenn. Crim. App. Jan. 5, 2005) (noting that the odor of methamphetamine from the defendant's home alone established probable cause)). In this case, the affidavit stated that officers responded to the motel after Ms. Gallagher reported smelling what she believed was the odor of marijuana coming from room 452. When Officer Lambert approached the door to room 452 and before Officer Lambert could knock, the Petitioner opened the door, and Officer Lambert smelled the "strong odor" of what he believed was raw marijuana. This information alone provided an independent and separate source of information for probable cause supporting the issuance of the warrant. *See Carter*, 160 S.W.3d at 532; *Clark*, 844 S.W.2d at 600.

The Petitioner concedes that "prior case law does support the general proposition that the odor of raw marijuana may or can be enough on its own to establish probable cause," (emphasis omitted) but he nonetheless cites in his reply brief articles contesting that prior case law and argues that the plain smell of marijuana did not establish probable cause in this case. *See*, *e.g.* Cynthia A. Sherwood, et al., "Even Dogs Can't Smell the Difference," 55 Tenn. B.J. 14, 18 (Dec. 2019) (explaining that "the premise of plain smell [of marijuana] is now bankrupt" because the odor of hemp, which is now legal to possess in Tennessee, is indistinguishable from the odor of marijuana). The Petitioner has waived the contention that the warrant lacked probable cause on the assertion that the smell of marijuana and hemp are so similar as to be indistinguishable. He introduced no proof at the post-conviction hearing regarding the similarity or dissimilarity of the two substances, and he did not present the issue to the post-conviction court for factual findings. A petitioner may not assert one ground for relief in the trial court and then pursue a different theory on appeal. *State v. Adkisson*, 899 S.W.2d 626, 634-35 (Tenn. Crim. App. 1994). Also, the Petitioner raises this issue for the first time in his reply brief. "Issues raised for the first time in a reply brief are waived." *See Hughes v. Tennessee Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017). Therefore, we do not resolve in this case whether the plain smell of marijuana alone is sufficient to establish probable cause for the issuance of a search warrant as it involves the distinction between the odor of marijuana versus the odor of hemp. Because that issue is not before this court, we rely in this case on our precedent that the plain smell of an illegal substance can establish probable cause.

The Petitioner also contends that the magistrate improperly relied on Sergeant White's sworn statements of other officers' plain smell of marijuana when Sergeant White himself did not personally smell the odor of marijuana. To the contrary, "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111 (1965); *State v. Smotherman*, 201 S.W.3d 657, 663 (Tenn. 2006); *State v. Wine*, 787 S.W.2d 31, 33 (Tenn. Crim. App. 1989); *State v. Brown*, 638 S.W.2d 436, 438 (Tenn. Crim. App. 1982). The magistrate was entitled to rely on the observations made by Officer Lambert "and other Jackson Police Department officers" but sworn to by Sergeant White in the affidavit. Therefore, counsel's failure to challenge the warrant on this basis on direct appeal did not result in prejudice.

Finally, the Petitioner asserts that the affidavit stated that Ms. Gallagher directed officers to room 452 but that she testified at trial that she directed officers to a range of rooms between 450 and 455. "In reviewing the existence of probable cause for issuance of a warrant, we may consider only the affidavit and may not consider any other evidence known by the affiant or provided to or possessed by the issuing magistrate." *Carter*, 160 S.W.3d at 533. Ms. Gallagher's trial testimony is beyond the four corners of the affidavit and we would not have considered it in reviewing the magistrate's probable cause determination on direct appeal. Therefore, he has not established prejudice for counsel's failure to challenge the warrant's validity on

this basis on direct appeal.

> We conclude that under the totality of the circumstances, the search warrant affidavit was sufficient to establish probable cause for the search of the motel room even after any references to the officers' observations upon entering the motel room were removed.  Thus, even if the officers' initial entry was unconstitutional, the independent source doctrine applies.  The Petitioner has not shown any prejudice from counsel's failure to challenge the validity of the search warrant on direct appeal because that claim would not have been meritorious.  He is not entitled to relief.

*Green*, 2022 WL 2760879, at **6-8.

The Warden argues that there was no actual prejudice to Petitioner because the underlying Fourth Amendment claim lacked merit based on the independent source doctrine and because the smell of marijuana alone was sufficient to establish probable cause.  Respondent contends that the TCCA's evaluation of the underlying Fourth Amendment claim and the related ineffective assistance was not contrary to existing Supreme Court law and was based on a reasonable application of the facts.  According to Eller, a fair-minded jurist could resolve Green's claim on prejudice grounds as the TCCA has done.

The Sixth Circuit has clearly stated that the odor of marijuana at a residence contributes to a finding of probable cause.  *See United States v. Yarbrough*, 272 F. App'x 438, 443 (6th Cir. 2007) (per curiam) (citing *United States v. Elkins*, 300 F.3d 638, 659-660 (6th Cir. 2002)).  In Green's case, there was the initial assertion by the desk clerk about the smell of marijuana in the area near his room and the officers' affidavits concerning the odor of marijuana.  Based on these statements, there was probable cause for the search warrant.  "Because of the well-established principle that 'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit,'" the inmate's appellate counsel was not ineffective for failure to raise the issue of the search warrant on appeal.  *See Tackett v. Trierweiler*, 956 F.3d 358, 376 (6th Cir. 2020).  Petitioner has not shown prejudice based on failure to address the search warrant on appeal.

The TCCA's decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent and is based on a reasonable determination of facts in light of the record before the state court. Petitioner's ineffective-assistance-of-appellate-counsel claims are without merit and are DENIED.

For the foregoing reasons, the Petition is DENIED because the claims are not cognizable or lack merit. The Clerk shall enter judgment for Respondent.

VI.   APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Green does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on

appeal must first file a motion in the district court along with a supporting affidavit. However, the rule also provides that, if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis ("IFP") in the appellate court. Fed. R. App. P. 24(a).

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal IFP is therefore DENIED.[6]

IT IS SO ORDERED this 4th day of August 2026.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[6]If Petitioner files a notice of appeal, he must also pay the full $605 appellate filing fee or file a motion to proceed IFP and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.